UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

               v.

JOSEPH TYSON,

               Defendant.

DECISION & ORDER

06-CR-6127

---

## INTRODUCTION

By Order of the Honorable Michael A. Telesca, United States District Judge, dated July 17, 2006, all pretrial matters in the above-captioned case were referred to United States Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket #10.) By a August 29, 2006 Order of Judge Telesca, the case was transferred to the undersigned. The matter is now before this Court on defendant's objections, filed on September 4, 2007, (Docket # 45) to the Report and Recommendation ("R & R") filed by Judge Feldman on August 22, 2007 (Docket # 44).

## BACKGROUND

The defendant stands accused in a seven count second superceding indictment with offenses relating to the sexual exploitation of children; Count I and II charge production of child pornography; Count III charges transportation of a minor; Count IV charges aggravated sexual abuse; Count V charges possession of child pornography; Count VI charges use of an interstate facility to entice a minor; and Count VII charges travel with intent to engage in illicit sexual conduct. In his omnibus motion filed by counsel

on November 30, 2006 (Docket #19), the defendant moved for suppression of physical evidence found in his apartment, as well as for the suppression of statements he purportedly made to the police. In regard to this application, an evidentiary hearing was conducted before Judge Feldman on February 7 and February 27, 2007. Subsequently, on April 27, 2007 (Docket #36), counsel filed a supplemental motion to suppress the physical evidence found in the defendant's residence. Furthermore, on April 16, 2007 (Docket #31) and May 18, 2007 (Docket # 40), the defendant himself filed *pro se* motions to suppress.

The Court has now had the opportunity to review Judge Feldman's R & R, the defendant's objections to the R & R, and the transcript of the hearing held on February 7th and February 27th of this year, along with the exhibits received at the hearing.

## STANDARD OF REVIEW

In pertinent part, 28 U.S.C. § 636(b)(1) directs:

(B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A) . . . .

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (1995). A district judge, however, may not reject the credibility findings of a magistrate judge without conducting an evidentiary hearing in which the district judge has the opportunity to observe and evaluate witness credibility in the first instance. *Cullen v. United States*, 194 F.3d 401, 406 (2nd Cir. 1999).

**ANALYSIS**

In his R & R, Judge Feldman recommended: that defendant's application to suppress items seized from his residence at 515 Camelot Court Apartments be denied; that his application to suppress statements made to Detective James McLaughlin in Keene, New Hampshire on September 28, 2006, be denied; that his application to suppress statements made to Detective Scott Lambert in Canandaigua, New York on October 11, 2005, be denied; that his application to suppress statements made to Detective Scott Lambert in Canandaigua, New York on October 28, 2005 be denied; and that his application to suppress statements made to Special Agents Jeffrey Kassouf and Douglas Soika of the Federal Bureau of Investigation ("FBI").

With respect to the R & R, the defendant raises four objections. The Court will now consider these objections *de novo*. For convenience sake, the Court will address each of the defendant's objections under the headings and in the order raised by the defendant.

**I.   The Government Failed to Prove that Mr. Tyson was Apprised of his *Miranda* Rights**

The Court disagrees with the defendant's contention that the Government failed to prove that the defendant was advised of his *Miranda* warnings. Instead, based upon the evidence presented at the suppression hearing, the Court finds, as did Judge Feldman, that the Government proved by a preponderance of evidence that the defendant knowingly and voluntarily waived his constitutional right to remain silent and agreed to speak to Detective McLaughlin, and that the resulting statements he made were not the result of any type of physical or psychological coercion or of any improper inducement such that his will was overborne. Furthermore, to the extent the defendant now argues that Judge Feldman

erred in considering the transcript of the recording of Detective McLaughlin's interview with the defendant, because the recording itself was not introduced and conditions for the receipt of secondary evidence were not met, the Court finds such argument to be without merit. Since the defendant did not object to the receipt of the transcript at the hearing, he can not now complain that Judge Feldman improperly considered it (Transcript #1, September 7, 2007, page 12, lines 20-25). *Long Island R. Co. v. United States*, 307 F. Supp. 988, 994 (E.D.N.Y. 1969); McCormick, Law of Evidence (Sixth Ed.), § 52 at 115.

**II.    Mr. Tyson Did Not Consent to the Search of His Apartment**

The Court disagrees with the defendant's contentions as to the search of his apartment. Rather, the Court concludes, as did Judge Feldman, that the Government established at the hearing, by a preponderance of evidence, that the defendant voluntarily consented to the search of his residence at 515 Camelot Court Apartments on September 28, 2005. The Court further agrees with Judge Feldman that to the extent the handwritten phrase, "CPU and electronic storage devices," on the consent form, which defendant signed, could be interpreted as a restriction on the scope of the search, this restriction was eliminated when the police suspended the consent search and obtained a search warrant. Moreover, consistent with Judge Feldman's R & R, the Court finds that the items specified in the Government's Notice of Intent to Use (Docket #26) were validly seized pursuant to the search warrant and, thus, were not acquired as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Finally, the Court agrees with Judge Feldman that Detective Lambert changed the locks on the defendant's apartment to secure the location while the search warrant was being obtained and,consequently his action in doing so did not amount to an unlawful seizure.

**III.     The Canandaigua Police Illegally Seized Mr. Tyson's Apartment**

The defendant argues that Detective Lambert, by directing, after the search warrant was executed, the superintendent of the defendant's apartment building to change the locks on the defendant's apartment, to give the sole key to Detective Lambert, and to have the defendant contact Detective Lambert when he wished to enter his apartment, requires the suppression of statements made by the defendant to Detective Lambert on October 11, 2005, as fruit of the poisonous tree. More specifically, the defendant contends that the conduct on the part of Detective Lambert amounted to an illegal seizure of the defendant's property, and but for the illegal seizure he would not have had to go to the Canandaigua Police Department on October 11, 2005, to meet with Detective Lambert to obtain the key to his apartment. Thus, the defendant maintains that it was only by seizing his apartment that Detective Lambert was able to engage him in conversation.

First, in considering the defendant's argument, the defendant is mistaken when he states, "after executing a search warrant at 515 Camelot Court, Detective Lambert directed the building's superintendent to change the locks to the apartment . . ." ( Objections to Magistrate Judge's Report and Recommendation at 13.) In fact, Detective Lambert testified at the continuation of the suppression hearing on February 27, 2007, that the locks were changed between the consent search and the execution of the search warrant (Transcript #2, p. 86, lines 8-11). On this issue, Judge Feldman found as follows:

> Finally, I disagree with Tyson's claims that Lambert's decision to change the lock on his apartment constituted an unlawful seizure. I find credible Lambert's testimony that after suspending the initial consent search, he wanted the locks on the apartment changed in order to secure the premises while a search warrant was obtained. *See Segura v. United States*, 468 U.S. 796, 798 (1984) (when officers properly enter premises where occupant has been taken into custody, officers are entitled to secure the premises "to preserve the status

quo" while a warrant is obtained and such is not in violation of the Fourth Amendment's proscription against unreasonable seizures). Lambert's efforts to secure the premises after the search was completed was also justified. Lambert knew that the defendant had been arrested in New Hampshire and the timing of his return to Western New York was uncertain. He was unsure who had access to the apartment and was concerned that the police department may be liable for any loss pending Tyson's return from New Hampshire since the police had last access to the premises. T2 at 86-87. There is no evidence that Lambert or anyone else in law enforcement used the key to enter the premises after the search warrant was executed and no claim that Lambert refused to give the key back to Tyson when he did return to Canandaigua after being released from custody in New Hampshire. Accordingly, it is my Report and Recommendation that Tyson's motion to suppress the fruits of the search be denied.

The touchstone of the Fourth Amendment is reasonableness. *Brigham City, Utah v. Stuart,* __U.S.__, 126 S.Ct. 1943, 1947 (2006). Based upon Judge Feldman's evaluation of Detective Lambert's credibility, the Court concludes, as did Judge Feldman, that Detective Lambert acted reasonably in having the locks to the defendant's apartment changed and maintaining possession of the key, and not in violation of the defendant's Fourth Amendment rights.

Even assuming *arguendo* that Detective Lambert's conduct with respect to changing the locks and maintaining possession of the key somehow amounted to an unlawful seizure of the defendant's property in violation of the Fourth Amendment, the Court fails to find a sufficient casual connection to justify application of the fruit of the poisonous tree doctrine to statements the defendant made to Detective Lambert on October 11, 2005. In that regard:

> The exclusionary rule is a judicially created remedy that prohibits the government from introducing at the defendant's trial evidence of guilt obtained through violations of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) . . . . The test for determining the admissibility of evidence obtained through a chain of causation that began with an illegal arrest is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to

be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quoting Maguire, Evidence of Guilt, 221 (1959)). Thus, if the causal chain between the initial illegality and the evidence sought to be excluded is broken, the link to the evidence is sufficiently attenuated to dissipate the taint of illegal conduct. *United States v. Green*, 111 F.3d 515, 521 (7th Cir.1997). It has been noted that the purpose of this attenuated connection test is to mark the point of diminishing returns of the deterrence principle inherent in the exclusionary rule. LaFave, Search and Seizure, § 11.4(a), at 235 (1996). Moreover, "[i]t is critical that courts wrestling with 'fruit of the poisonous tree' issues keep that fundamental notion in mind, for when it is lost sight of the results can be most unfortunate." *Id.*

*United States v. Jones*, 214 F.3d 836, 842 (7th Cir. 2000). Here, while Detective Lambert's actions may have arguably led the defendant to seek him out at the Canandaigua Police Department, the Court concludes that the statements the defendant made on October 11, 2005 were not been achieved by the exploitation of the supposed illegality. Rather they resulted from the willingness of the defendant, who was not in custody at any time on October 11, 2005, to speak to Detective Lambert both before and after he was advised of his constitutional rights. Indeed, assuming the illegality the defendant urges, suppression of the defendant's statements on that basis alone would amount to extending the branches of the poisonous tree too far.

**IV.     Mr. Tyson Did Not Knowingly and Voluntarily Waive His Right to Counsel on March 29, 2006**

The defendant argues that the evidence adduced at the hearing failed to establish that the defendant knowingly and voluntarily waived his right to counsel on March 29, 2006. The Court concludes otherwise, and agrees with Judge Feldman that the Government did establish by a preponderance of evidence that the defendant did in fact knowingly and voluntarily waive his right to counsel. Moreover, to the extent the defendant suggests that Special Agents Kassouf and Soika improperly sought, from the defendant, a waiver of his

right to counsel in connection with federal charges in the criminal complaint on which he was about to be arraigned, this argument, as Judge Feldman points out in his R & R, has been rejected this argument by the Second Circuit. *United States v. Duvall*, 537 F. 2d 15, 22 (2d Cir. 1976).

## CONCLUSION

For the reasons stated above, the Court adopts in its entirety Judge Feldman's R & R of August 22, 2007 (Docket # 44). Accordingly, the defendant's application to suppress tangible evidence resulting from a search of his apartment on September 28, 2005, his application to suppress statements made to Detective McLaughlin on September 28, 2005, his application to suppress statements made to Detective Lambert on October 11, 2005, his application to suppress statements made to Detective Lambert on October 28, 2005, and his application to suppress statements made to Special Agents Kassouf and Soika on March 29, 2006 are denied.

SO ORDERED.

Dated: Rochester, New York
       September 26, 2007

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge